FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING

JUN - 2 2006

**IN THE UNITED STATES DISTRICT COURT**

Stephan Harris, Clerk
Cheyenne

**FOR THE DISTRICT OF WYOMING**

FISH CREEK CATTLE CO., a            )
Wyoming Corporation; INGALLS        )
INC., a Wyoming Corporation;        )
RUDY STANKO; and MICHAEL STANKO,    )
                                    )
        Plaintiffs,                 )
                                    )
        v.                          )   Case No. 05-CV-147-B
                                    )
UNITED STATES FOREST SERVICE,       )
DEPARTMENT OF AGRICULTURE;          )
NANCY HALL, in her official         )
capacity as Jackson District        )
Forest Ranger; KNIFFY HAMILTON,     )
in her official capacity as         )
Supervisor of the Bridger-Teton     )
National Forest; and MARY           )
WAGNER, in her official capacity    )
as Appeal Reviewing Officer,        )
                                    )
        Defendants,                 )

## ORDER AFFIRMING ADMINISTRATIVE ACTION AND
## GRANTING MOTION TO DISMISS REMAINING CLAIMS

This matter involves the partial suspension and cancellation
of grazing permits issued to two corporations, Fish Creek Cattle
Company and Ingalls, Inc.  After reading the briefs, hearing oral
arguments, and being fully advised of the premises, the Court **FINDS**
and **ORDERS** as follows:

**I.    STATEMENT OF THE PARTIES AND JURISDICTION**

Plaintiffs Rudy Stanko and Michael Stanko own stock in two corporations, Fish Creek Cattle Company and Ingalls, Inc. These two corporations were issued grazing permits which were suspended and cancelled, in part, by the Forest Service. The final agency action suspending and cancelling the permits is the subject of this action.

Defendant United States Forest Service is an agency of the United States Department of Agriculture. The Forest Service is charged with administering the Bridger-Teton National Forest. Defendant Nancy Hall is the District Ranger of the Bridger-Teton National Forest, Kniffy Hamilton is the Forest Supervisor and Mary Wagner, in her capacity as Deputy Regional Forester, acts as an Appeal Reviewing Officer.

Plaintiffs seek judicial review of the final agency action under the Administrative Procedure Act, 5 U.S.C. §§ 701 et seq., and seek declaratory and injunctive relief under 28 U.S.C. §§ 1331, 2201, and 2202.

## II. REVIEW OF AGENCY ACTION

### A. STANDARD OF REVIEW

This Court reviews the Forest Service's final decision to suspend and cancel a portion of Plaintiffs' grazing permits under

2

the Administrative Procedures Act (APA), which provides that the reviewing court shall hold unlawful and set aside agency action, findings, and conclusions found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law...." 5 U.S.C. § 706(2)(A). See also Utah Environmental Congress v. Bosworth, 372 F.3d 1219, 1223 n.7 (10th Cir. 2004). This standard requires that the agency provide a reasoned basis for its decision and that the decision be supported by the facts in the record. Olenhouse v. Commodity Credit Corp., 42 F.3d 1560, 1575 (10th Cir. 1994).

The duty of a court reviewing agency action under the arbitrary or capricious standard is to ascertain whether the agency "examined the relevant data and articulated a rational connection between the facts found and the decision made." Id. at 1574. The reviewing court "must determine whether the agency considered all relevant factors and whether there has been a clear error of judgment." Id. Because the arbitrary and capricious standard focuses on the rationality of an agency's decision-making process rather than on the rationality of the actual decision, an agency's action must be upheld, if at all, on the basis articulated by the agency itself. Id. The action may not be upheld on a

3

different basis articulated by the government on appeal to this Court. <u>Black Butte Coal Co. v. United States</u>, 38 F. Supp. 2d 963, 969 (D. Wyo. 1999) (Brimmer, J.).

Even if the court does not agree with the agency's findings, those findings cannot be set aside if they are supported by substantial evidence. <u>Four B Corp. v. NLRB</u>, 163 F.3d 1177, 1182 (10th Cir. 1998). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Id.</u> (internal quotation marks and citation omitted). An agency's decision will be deemed arbitrary and capricious if the agency relied on factors which Congress had not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise. <u>Lamb v. Thompson</u>, 265 F.3d 1038, 1046 (10th Cir. 2001).

**B.   FACTUAL BACKGROUND**

Rudy and Michael Stanko are shareholders in two corporations known as Fish Creek Cattle Company ("Fish Creek") and Ingalls, Inc ("Ingalls"). (Compl. ¶¶ 1-2.)  These companies hold permits for

livestock grazing on two allotments in the Bridger-Teton National Forest.  (A.R. at 173, 187.)  Fish Creek holds Term Grazing Permit No. 04017 for the Bacon Creek Allotment, issued on March 25, 2002. (Id. at 187.)  Ingalls holds Term Grazing Permit No. 04016 for the Fish Creek Allotment, issued on May 21, 2001.  (Id. at 173.)  Under the 2003 Annual Operating Instructions, the livestock of Fish Creek and Ingalls were run together as one herd on the Fish Creek Allotment and the Bacon Creek Allotment was rested during the year. (Id. at 228.)

In 2002 and 2003, the Forest Service repeatedly notified the Plaintiffs that they were not complying with their grazing permits and the Annual Operating Instructions governing the use of their allotments.   Plaintiffs were sent the following Notices of Non-Compliance:

1.   November 21, 2002

Fish Creek was advised of its failure to timely remove livestock from the Bacon Creek Allotment as required by its grazing permit.  (A.R. at 238-239.)

2.   February 19, 2003

A cow and a calf still remained on the Fish Creek feed ground, when the grazing permit required that livestock be removed by October 15, 2002.  (A.R. at 252.)

3.   March 5, 2003

5

Seven cattle still remained which were to have been removed by October 15, 2002. Fish Creek was given fourteen days to remove the cattle. (A.R. at 257.)

4.   March 26, 2003

Fish Creek was given another fourteen days to remove the seven cattle referenced in the March 5, 2003 notice. (A.R. at 260.)

5.   June 27, 2003

Fish Creek and Ingalls were notified of three violations of the 2003 Annual Operating Instructions, including carcasses left within one-half mile of trails in two areas and over 400 cows outside the allotment boundary. Verbal notice of two carcasses had already been given to Fish Creek, but the carcasses were not removed. Carcass removal is necessary for grizzly bear management. The Plaintiffs were given a time frame to correct the violations and notified that failure to do so could lead to suspension or cancellation of both grazing permits. (A.R. at 275-76.)

6.   September 9, 2003

Fish Creek and Ingalls were notified of non-compliance with the 2003 Annual Operating Instructions on September 2, 4, 5, 6, and 8, 2003. There were 160 head of cattle outside of the Bacon Creek Allotment, including cattle drifting within Grand Teton National Park. Plaintiffs had failed to correct the violations after repeated verbal notice to a Fish Creek employee and verbal notice to Rudy Stanko. Plaintiffs were given until September 12, 2003, to correct the violations and informed that the livestock must be within the planned unit for the remainder of the grazing season. The Plaintiffs were also notified that failure to comply may result in initiation of permit suspension or cancellation procedures. (A.R. at 283-85.)

7.   September 18, 2003

6

Plaintiffs were notified that as of September 12, 2003, as many as 276 head of cattle remained outside the scheduled grazing unit. In the letter, Defendant Hall further informed Plaintiffs that she was suspending 25% of their grazing permits for two seasons. The notice stated:

> During the 2003 grazing season, we have numerous amounts of your permitted cattle outside of the planned grazing unit (per Annual Operating Instructions) and outside of the allotment. Often, your cattle have left National Forest lands to inconvenience other private land owners, the Grand Teton National Park, Wyoming State lands, and the National Elk Refuge. Both in the 2002 and 2003 grazing seasons, you have demonstrated the inability to effectively manage your livestock on these National Forest lands or correct non-compliance situations in a timely manner. Therefore, it is my decision to suspend 25 percent of your grazing privilege for the 2004 and 2005 grazing seasons on the Bacon Creek and Fish Creek Allotments. I am willing to discuss with you whether this suspension will be totally in numbers of livestock, deferred entry, or a combination of numbers and reduced season.

(A.R. 290-292.)

8. November 26, 2003

Fish Creek and Ingalls were notified that inspections on November 19, 23 and 25, 2003, revealed livestock on National Forest lands after the grazing period had ended. The letter also noted that on October 21, 22, 23, 28 and November 4, 2003, cattle had been reported on National Forest land after the end of the grazing period on and that Fish Creek was contacted at that time. Plaintiffs were given until December 1, 2003 to remove all livestock from Bridger-Teton National Forest. (A.R. at 415-17.)

7

9.    December 30, 2003

Defendant Hall advised Plaintiffs that the previous violations of the Annual Operating Agreement had not been corrected and that she was accordingly cancelling 25% of the permits and suspending 50% of the permits for the remainder of the 2004 grazing season and for the 2005 season.  The notice stated:

On December 11, 2003 Forest Service personnel documented one head of cattle with a Fish Creek Cattle Company ear tag along the Gros Ventre road across from the mouth of Lightning Creek.    Additionally, on December 16, 2003 Forest Service documented that the cow across from Lightning Creek was in the same location and there was an additional cow located on the edge of Upper Slide Lake.   On December 19, 2003 Forest Service personnel observed the two previously mentioned cattle in the same spots. Finally, on December 29, 2003 a report of a black cow near the mouth of Alkali Creek and three head near the Gros Ventre River Ranch was received from Game and Fish Department personnel.    Forest Service personnel also observed the three head near the Gros Ventre River Ranch on December 29, 2003.

In reviewing this case I have considered this non-compliance situation with our 2003 records and what is commonly expected in the management of permitted livestock with regards to the Annual Operating Instructions.  During the 2003 grazing season, we have numerous accounts of your permitted cattle outside of the planned grazing unit (per Annual Operating Instructions) and outside of the allotment. You are continuing to demonstrate the inability to effectively follow the terms and conditions of your permit on these National Forest lands and correct non-compliance situations in a timely manner.  **Therefore, it**

8

> **is my decision to cancel the previously
> suspended portion of the Fish Creek Cattle
> Company permit (25%) and to suspend 50% of the
> remainder of the permit for the 2004 and 2005
> grazing seasons.**

(A.R. at 429 (bold added).)

Plaintiffs appealed the September 18, 2003 decision to the
District Forester and then to the Regional Forester. (A.R. at 296-
307, 317-26.)  The decisions were affirmed at both levels.  (A.R.
at 392-93, 396-97.)  Plaintiffs also appealed the December 30, 2003
decision to the District Forester and then to the Regional Forester
(A.R. at 431-38, 526-527.)  The decisions were affirmed at both
levels.   (A.R. at 519-524, 532-33.)

## C.   **ANALYSIS OF ISSUES**

In their Amended Complaint, Plaintiffs challenge only the
December 30, 2003 decision to cancel 25% of the grazing permits,
and to suspend 50% of the remainder of the permits for the 2004 and
2005 grazing seasons.[1]  (Am. Comp. ¶ 43.)  In Plaintiffs' Brief and

---

[1]

Defendants have moved to strike the factual allegations in the
complaint pursuant to U.S.D.C.L.R. 83.7.2 which provides that  a
petition for administrative review shall not contain factual
allegations in the nature of a complaint, and states that, "Factual
allegations in the petition or notice shall be stricken."    The
Court agrees that the factual allegations in the complaint should
be stricken from Plaintiffs' petition for administrative review and
will accordingly grant the motion to strike.

9

Memorandum of Law, Plaintiffs set forth four objections to the cancellation and suspension of the grazing permits.     Those objections are addressed below.[2]

## 1.   THE VIOLATIONS FOR WHICH PLAINTIFFS WERE CITED BY THE DEFENDANTS DID NOT JUSTIFY THE SANCTIONS IMPOSED

Plaintiffs first argue that the permanent cancellation of 25% of their grazing permits and the temporary suspension of 50% of the remainder of the permits was not justified because Plaintiffs did not run any cattle on the Bacon Creek Allotment during 2003.  This argument is without merit.  Each of Plaintiffs' grazing permits provided that the permit may be suspended or cancelled, in whole or in part, for failure to comply with the instructions of the Forest Service officers.   (A.R. at 173, 187.)     The 2003 Operating Instructions governed both of Plaintiffs' grazing permits, and in fact were titled, "Annual Operating Instructions Fish Creek and Bacon Creek C & H Allotments 2003."   (A.R. at 228.)   The Operating Instructions provided that Plaintiffs would run the Ingalls and Fish Creek cattle together as one herd on the Fish Creek Allotment

_____

2

Plaintiffs also argue that they have exhausted their administrative remedies.  (Pls.' Br. 5.)  The Government concedes, however, that Plaintiffs have exhausted their administrative remedies with respect to the December 30, 2003 permit action. (Defs.' Answer Br. 9.)

10

during 2003 while the Bacon Creek Allotment was rested. (A.R. at 228.) Because the operating instructions governed both allotments, failure to comply with the instructions resulted in sanctions for both allotments.

Plaintiffs also maintain that the sanctions imposed were excessive because the violations were minor in nature. Again, their argument is without merit. On an individual basis, the violations may have been minor. Taken as a whole, however, the violations were substantial. Not only did Plaintiffs repeatedly fail to comply with the operating instructions, they also failed to remedy the violations, even though they were given numerous opportunities do so. The Forest Service Handbook advises that non-compliance with the grazing permits' terms and conditions is generally cumulative and that recent prior occurrences of non-compliance should be considered in determining second and third offenses. (A.R. at 708.) Under these circumstances, the agency action was not arbitrary, capricious or an abuse of discretion.

### 2.   THE DEFENDANTS UNLAWFULLY TOOK THE PLAINTIFFS' PROPERTY AND GRAZING INTERESTS WITHOUT ESTABLISHING WILLFUL NONCOMPLIANCE BY THE PLAINTIFFS

Plaintiffs allege that the cancellation and suspension of their grazing permits was improper because the Defendants failed to

11

show willful non-compliance on the part of the Plaintiffs as

required by 5 U.S.C. § 558.  Section 558 provides, in part:

§ 558. Imposition of sanctions; determination of
applications for licenses; suspension, revocation, and
expiration of licenses

(c) ...Except in cases of willfulness...suspension,
revocation, or annulment of a license is lawful only if,
before the institution of agency proceedings therefor,
the licensee has been given--

(1) notice by the agency in writing of the facts or
conduct which may warrant the action; and

(2) opportunity to demonstrate or achieve compliance with
all lawful requirements.

Section 558 does not require that the Forest Service establish

willful non-compliance to impose a sanction.  Rather, it mandates

that the licensee be given notice and an opportunity to achieve

compliance, unless the non-compliance was willful.  The Forest

Service gave Ingalls and Fish Creek repeated notice, complying with

5 U.S.C. § 558(c)(1).

### 3.   THE PLAINTIFFS WERE PROVIDED NO OPPORTUNITY TO COME INTO COMPLIANCE, DESPITE CLEAR LANGUAGE IN STATUTORY AND CASE LAW REQUIRING SUCH AN OPPORTUNITY

The December 30, 2003 cancellation and suspension letter,

according to Plaintiffs, did not afford them the opportunity to

achieve compliance as required by 5 U.S.C. § 558(c)(2).  The

Plaintiffs' argument ignores that the Forest Service provided seven

12

written notices and opportunities to come into compliance before
the contested sanctions were imposed.  Plaintiffs' assertion that
they were not given an opportunity to come into compliance is
clearly contrary to the evidence.

### 4.  THE ADMINISTRATIVE PROCEEDINGS RELIED ON INADEQUATE EVIDENCE

Plaintiffs assert that the administrative record does not
contain substantial evidence to support the partial suspension and
cancellation of their grazing permits.   They maintain that
Defendants  provided  only,  "hearsay,  innuendo,  second-hand
assertions, and uncorroborated argument."  (Pls.' Br. 5.)

The Tenth Circuit has explained that:

> [T]he Administrative Procedure Act (5 U.S.C. § 556(d))
> renders admissible any "oral or documentary evidence"
> except "irrelevant, immaterial, or unduly repetitious
> evidence".... Thus hearsay evidence is not inadmissible
> per se.... Indeed, Richardson, 402 U.S. at 407-08,
> 409-10, 91 S.Ct. at 1430, 1431 suggests that where a
> claimant  has  failed  to  subpoena  a  witness,  even
> uncorroborated  hearsay  evidence  elicited  from  that
> witness  may  constitute  substantial  evidence  in  an
> administrative hearing if found reliable and probative.

Bennett v. National Transp. Safety Bd., 66 F.3d 1130, 1137 (10th

Cir. 1995).  The administrative record includes direct observations
by Forest Service officials and reports from Wyoming Game and Fish
officials.   The record also contains photographs of Plaintiffs'

13

cattle, showing the date and location taken.   The letters to Plaintiffs document specific and detailed violations of the Plaintiffs' permits and the 2003 Annual Operating Instructions. The evidence presented by the Forest Service is credible and reliable and constitutes substantial evidence to support the final agency action.

## III. MOTION TO DISMISS REMAINING CLAIMS

In addition to requesting administrative review of the Forest Service's December 30, 2003 decision and appeal, Plaintiffs also seek declaratory and injunctive relief.  Plaintiffs ask this Court to declare that the padlocking of roads on their grazing allotments violates their property rights; to enjoin future interference with Plaintiffs' access to the roads on their allotments; to declare that the proclamation creating the Teton Forest Reserve is unconstitutional; to declare that Wyoming is still an open range state and that land in the national forest system is subject to the open range law; to order Defendants to provide an accounting of funds received under the Twenty Five Percent Fund Act of 1908 and other acts; to declare that the range improvements on Plaintiffs' allotments belong to the Plaintiffs; and to declare that the Defendants do not have regulatory authority to modify the

14

Plaintiffs' use of their allotments.

The Defendants have moved to dismiss the Plaintiffs' remaining claims.  For the reasons set forth below, the Court finds that the motion to dismiss should be granted.

## A.   STANDARD OF REVIEW

In reviewing a motion to dismiss, this Court must accept the well pleaded allegations of the complaint as true and construe them in the light most favorable to the plaintiff.  Ramirez v. Dept. of Corrections, 222 F.3d 1238, 1240 (10th Cir. 2000). Generally, the complaint should not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.  Id.

## B.   MOTION TO DISMISS

### 1.   FAILURE TO EFFECT SERVICE

Defendants initially submit that the remaining claims should be dismissed because Plaintiffs have not achieved service of process in the manner mandated in Fed. R. Civ. P. 4(i), which states that:

(1) Service upon the United States shall be effected

(A) by delivering a copy of the summons and of the complaint to the United States attorney for the district in which the action is brought or to an assistant United States attorney or clerical employee designated by the

15

United States attorney in a writing filed with the clerk
of the court or by sending a copy of the summons and of
the complaint by registered or certified mail addressed
to the civil process clerk at the office of the United
States attorney and

(B) by also sending a copy of the summons and of the
complaint by registered or certified mail to the Attorney
General of the United States at Washington, District of
Columbia....

Defendants allege that service of process has not been
effected because a copy of the summons and complaint was not mailed
to the Attorney General of the United States. On May 19, 2006,
Plaintiffs filed notice of the service of the First Amended
Complaint on the Attorney General on January 10, 2006. Rule
4(i)(B), however, also requires that the Plaintiffs must send a
copy of the summons to the United States Attorney General.
Plaintiffs therefore have still not properly effected service on
Defendants by sending both a copy of the summons and complaint to
the United States Attorney General. The remaining claims should
consequently be dismissed for failure to achieve proper service and
for the reasons discussed below.

## 2.   **FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES**

Plaintiffs claim that they have been denied a property right
because the Forest Service has closed several roads which
Plaintiffs use to access their grazing allotments. Plaintiffs

16

suggest that the road closures interfere with a common law access easement.   (Am. Comp. ¶ 34.)   The Forest Service has denied Plaintiffs' written request to use the roads, and Plaintiffs are in the process of appealing the denial.   (Defs.' Br. Supp. Mot. to Dismiss 7.)

The Court agrees that Plaintiffs' claim that they have been denied a property right should be dismissed for failure to exhaust administrative remedies.   This Court has held that review of agency action is usually limited to a final agency action for which there is no other adequate remedy.   Rounds v. U.S. Forest Service, 301 F. Supp. 2d 1287, 1291 (D. Wyo. 2004) (Brimmer, J.).   The requirement of a final agency action is jurisdictional and serves to prevent courts from prematurely adjudicating matters that are initially committed to the agency's expertise and discretion.

## 3.   FAILURE TO STATE A CLAIM

### a.   ROAD CLOSURE

Defendants urge that even if Plaintiffs had exhausted their administrative remedies with respect to the road closures, the claim should also be dismissed because Plaintiffs have provided no authority for their assertion that the road closures extinguish an access easement which exists at common law between the base property owned by Plaintiffs and the grazing allotments, and provide no authority for their assertion that the statutes which

17

created the forest reserves do not authorize Defendants to prohibit cattlemen (who preceded the creation of the Forest Service) from grazing their livestock and gaining access to unload and load their livestock.  (Defs.' Br. Supp. Mot. to Dismiss 8; Am. Comp. ¶¶ 34, 35.)

This Court also agrees with Defendants that even if Plaintiffs had exhausted their administrative remedies, their request for declaratory and injunctive relief with respect to the road closures should be dismissed for failure to state a claim.  Plaintiffs offer no cogent authority that they possess an access easement over the Forest Service roads or that the Forest Service officials lack authority to control access to the roads.   In fact, the Tenth Circuit in Diamond Bar Cattle Co. v. United States, 168 F.3d 1209 (10th Cir. 1999) (Briscoe, J.) specifically found that grazing livestock on Forest Service lands is a privilege subject to the terms and conditions set by the Forest Service:

> Any grazing of cattle on public lands by plaintiffs' predecessors was permitted by an implied license, which is merely a "personal privilege to do some particular act or series of acts on land without possessing any estate or interest therein, and is ordinarily revocable at the will of the licensor." Black's Law Dictionary 919-20 (6th ed. 1990).

\*       \*       \*

> Current regulations provide that "all grazing and livestock use on National Forest System lands ... must be authorized by a grazing or livestock use permit." 36

18

C.F.R. § 222.3. Permits are issued for terms of ten years or less and are issued only after submission and approval by the Forest Service of an appropriate application. *See id.*§ 222.3(c)(1). A term permit holder has first priority for a new permit at the end of the term period, provided the holder has fully complied with the terms and conditions of the expiring permit. *See id.* Use of forest service lands for grazing purposes without a permit subjects the offender to unauthorized grazing use fees. See id. § 222.50(h). **Grazing permits "convey no right, title, or interest held by the United States in any lands or resources."** *Id.* § 222.3(b).

Diamond Bar Cattle Co., 168 F.3d at 1212 (bold added).

### b. DECLARATION THAT PROCLAMATION CREATING TETON FOREST RESERVE IS UNCONSTITUTIONAL

Plaintiffs present no authority for their contention that the

proclamation creating Teton Forest Reserve was unconstitutional.

A similar argument was rejected in Light v. United States, 220 U.S.

523, 537 (1911):

The courts cannot compel [Congress] to set aside the lands for settlement, or to suffer them to be used for agricultural or grazing purposes, nor interfere when, in the exercise of its discretion, Congress establishes a forest reserve for what it decides to be national and public purposes. In the same way and in the exercise of the same trust it may disestablish a reserve, and devote the property to some other national and public purpose. These are rights incident to proprietorship, to say nothing of the power of the United States as a sovereign over the property belonging to it.

### c. DECLARE THAT WYOMING IS STILL AN OPEN RANGE STATE AND THAT LAND IN THE NATIONAL FOREST SYSTEM IS SUBJECT TO THE OPEN RANGE LAW

Plaintiffs supply no authority for the proposition that the

national forest system is subject to Wyoming open range laws, and

19

federal authority dictates otherwise. See Diamond Bar Cattle Co.,
168 F.3d at 1217 (noting that grazing of livestock on national
forest system lands must by authorized by permit); Bilderback v.
United States, 558 F. Supp. 903, 907 (D. Or. 1982) ("Without
exception, courts have rejected this argument and held that the
state grazing laws had no application to the national forests.").

> **d.   ORDER DEFENDANTS TO PROVIDE AN ACCOUNTING OF
> FUNDS RECEIVED UNDER THE TWENTY FIVE PERCENT FUND
> ACT OF 1908 AND OTHER ACTS**

Plaintiffs also supply no authority for ordering the Forest
Service to provide an accounting of funds used for range
improvements. Nor have Plaintiffs established standing to request
an accounting. See Wyoming Sawmills v. U.S. Forest Service, 179 F.
Supp. 2d 1279, 1291-92 (D. Wyo. 2001) (reiterating that to satisfy
the standing requirement of Article III, plaintiffs must
demonstrate that they have suffered an injury in fact), aff'd, 383
F.3d 1241 (10th Cir. 2004), cert. denied, 126 S.Ct. 330 (2005).

> **e.   DECLARE   THAT   THE   RANGE   IMPROVEMENTS   ON
> PLAINTIFFS' ALLOTMENTS BELONG TO THE PLAINTIFFS AND
> DECLARE THAT THE DEFENDANTS DO NOT HAVE REGULATORY
> AUTHORITY TO MODIFY THE PLAINTIFFS' USE OF THEIR
> ALLOTMENTS**

Plaintiffs seek a declaration that the range improvements,
fences, water rights, cabins, and other appurtenances and fixtures
on their allotments belong to them and that the suspension and
cancellation of their grazing permits constituted a taking of these

20

property rights. Plaintiffs assertions are contrary to Tenth Circuit authority and contrary to the federal regulations governing grazing permits. Under 36 C.F.R. § 222.9(b)(2) and (4), title to permanent structural range improvements and non-structural improvements shall vest in the United States. Additionally, the appellate court has articulated that even if a federal licensee had a valid water right, denial of grazing permits does not constitute a taking of such a right. <u>Diamond Bar Cattle Co.</u>, 168 F.3d at 1217.

## 4. **REAL PARTIES IN INTEREST**

Defendants contend that Plaintiffs Rudy and Michael Stanko should be dismissed from this action because they are not real parties in interest. It is not necessary for the Court to reach this argument, however, as the claims against Defendants are dismissed for the reasons set forth above.

## IV. **CONCLUSION**

The Court finds that the Forest Service appropriately suspended and cancelled a portion of the grazing permits granted to Fish Creek and Ingalls, and finds that the suspension and cancellation were within the scope of the Forest Service's authority, and that the action was not arbitrary, capricious or an abuse of discretion. The Court further finds that Plaintiffs' remaining claims should be dismissed for failure to effect service,

21

failure to exhaust administrative remedies and failure to state a claim.

NOW, THEREFORE, IT IS HEREBY ORDERED that the Regional Forester and Appeal Reviewing Officer's decision affirming the December 30, 2003 partial suspension and cancellation of the Plaintiffs' grazing permits is **AFFIRMED**.  It is further

ORDERED that Plaintiffs' claims against Defendants are **DISMISSED**.  It is further

ORDERED that Defendants' motion to strike the factual allegations from the Plaintiffs' request for administrative review of agency action is **GRANTED**.

Dated this 2nd day of June, 2006.

CLARENCE A. BRIMMER
UNITED STATES DISTRICT JUDGE